Case number 165563, Tracey George v. Tre Hargett et al, oral arguments not to exceed 15 minutes 25. Ms. Sarah Campbell is the appellant. You may proceed. Good morning, your honors. May it please the court, my name is Sarah Campbell and I represent the state of Tennessee. I'd like to reserve three minutes for rebuttal. In 2014, Tennessee held an election in which all registered Tennessee voters had the opportunity to vote on four proposed amendments to the Tennessee Constitution and for governor. To determine whether those amendments had passed, Tennessee did exactly what it had done in past elections, exactly what it told voters it would do, and exactly what the Tennessee Constitution requires. It counted all of the votes that were cast on the proposed amendments and it determined whether the votes in favor of each amendment exceeded both half of the votes cast on the amendment and half of the votes cast in the gubernatorial election. Under that method, all four amendments passed. With her lawsuit, plaintiffs seek to undo the results of the election with respect to Amendment 1, an amendment that plaintiffs oppose that provides there is no state constitutional right to abortion. But there is no basis for a federal court to intervene in Tennessee's election. And the district court's injunction requiring Tennessee to recount the votes on Amendment 1 infringes on Tennessee's sovereignty and ironically infringes on the rights of Tennessee voters. Just out of curiosity, their argument is that you can only count the votes of those voters who also voted for governor. Does Tennessee record that information? Do you have the ability to do that? It would require a hand retabulation of the votes, essentially. We laid this out in our affidavits that accompanied our motion to stay to recount about the burden that this would entail. We think that we have the ability to do that with the exception of votes that were cast in Van Buren County, where ballots were destroyed by a fire. There's no ability to recount those votes. But we think that we could determine that information, but it's not automated in any way. It would require a hand count of the votes. The state asked the court to vacate the recount injunction and remand to the district court with instructions to enter judgment in favor of defendants because there's no violation of state law or any alternative to dismiss for lack of subject matter jurisdiction because there's simply no remedy that's available to plaintiffs in this case. First, Tennessee's method of determining whether a proposed amendment to the Constitution has passed is not fundamentally unfair and therefore does not violate the Due Process Clause. The law is clear, Your Honors, that in order for a state's election practice to violate the substantive component of the Due Process Clause, it must be an exceptional case in which the election practice rises to the level of fundamental unfairness. And the law is also clear that that will occur only when there is a non-uniformity in the state's election practice or a departure from previous election practice that disenfranchises voters or results in significant vote dilution. In other words, the state must change the rules of the game after the fact in a way that is prejudicial to voters. Here, that is not what occurred. The state counted the votes on Amendment 1 exactly as it counted the votes on all three other amendments on the ballot. It counted them the same way it had in past elections and the same way it told voters it would count them. There was simply no change in the rules that occurred and certainly none that was prejudicial to voters. Voters went to the polls with the expectation that their votes on Amendment 1 would be counted regardless of whether they voted for governor. And to say that to count the votes in that way was fundamentally unfair turns that doctrine on its head. There was nothing unfair about the way in which the state counted the votes on Amendment 1 and certainly nothing fundamentally unfair. Now the district court's holding that the election on Amendment 1 was fundamentally unfair rested on its conclusion that the state somehow violated state law by failing to condition the right to vote on an amendment on first voting for governor. For the reasons we've explained in some detail in our briefs, including the supplementary brief, we believe that interpretation cannot stand because the plaintiffs are now precluded by the state court judgment from continuing to litigate their interpretation of state law. That's a big question in our minds. I gathered as much from the supplemental briefing request, Your Honor. It sounds like an advisory opinion to me for the state Williamson County Chancery Court. The question of whether it was an advisory opinion and I guess the broader question whether the state court had jurisdiction over that action was litigated in the state court. And I point this court to the Supreme Court, U.S. Supreme Court's decision in Durfee v. Duke where it clearly held that when the issue of the state court's jurisdiction was considered by the state court and the state court issued a decision on its jurisdiction, that decision is entitled to collateral estoppel or res judicata effect just as much as its decision on the merits of the case. The really odd thing I think about that state case is that the state for whatever reason chose to sue some or all of the plaintiffs in this case. Your Honor, we chose to sue them because they obviously have the opposite position as us on the interpretation of state law. Do you claim that that decision is binding on any other than the plaintiffs in this case? No, we wouldn't say that. So why would we give res judicata effect when it applies only to these defendants? It doesn't solve the issue in Tennessee at all. And because you chose to sue these defendants, it at least superficially looks clear that you did so to achieve an advantage in this case. Your Honor, we chose to sue those defendants because they could zealously advocate for the position opposite the position that we were taking, which is required for a case for controversy to exist in the state court. There's nothing improper about doing that. And I would point this court, as we have in our briefs, to the Supreme Court's decision in Quinn v. Millsap. So that was a situation that in many ways was very analogous to this, except that the issue on which the state sued the private plaintiffs in state court was an issue of federal law. So to the extent there was anything improper, that would have been even more improper. If plaintiffs had not brought this suit, would you have had any basis for seeking the declaratory judgment in the state action? Well, if they had expressed a disagreement with us on the interpretation of state law, perhaps without actually suing, perhaps we could have brought the state court action. Plaintiffs suggest in their briefs that we could have sued John J. Hooker, who is now deceased. But he expressed a similar position to the plaintiffs with respect to Amendment 2 before the election was held and actually invited the state to engage in some kind of declaratory judgment action. It strikes me as a little suspicious. The election commissioner had gotten inquiries about how these votes were going to be counted even prior to the election, did it not, from both citizens and from the Davidson County Election Committee, right? It did, Your Honor. And yet you didn't seek a declaratory judgment at that point. You waited until after the results were in. No, Your Honor. At that time, based on the research that the election officials had done, they were confident that their interpretation was correct. And it was the consistent interpretation that the state had applied. Since this amendment in its current form, it had existed since 1953 and in a similar form since 1834. So at that time, there was no need for the state. Well, do you think the district court just went off the rails here in coming up with a different conclusion of what the Tennessee Constitution requires? Well, Your Honor, I don't know if I put it quite that way, but I think that the district court's interpretation of state law here is contrary to its plain text. And it's especially contrary to the well-settled principle under Tennessee law that when the state itself has interpreted a provision of the Constitution in a certain way for many years, that interpretation is entitled to respect. Because otherwise, and these are the words of the Tennessee Supreme Court, another interpretation would work great mischief. I think that, you know, and that principle had been applied in two cases specifically involving the interpretation of Article 11, Section 3 of the Tennessee Constitution. So I think that the district court's plaintiff's interpretation and the district court's interpretation of state law is contrary. The state had requested that this question of interpretation of the Tennessee Constitution be certified to the Tennessee Supreme Court. Is that still your position that what should have been done? Well, we believe that extension and certification at this point are unnecessary because of the collateral estoppel effect of the state court judgment. There's simply no case law that would support creating some kind of exception to ordinary principles of res judicata and collateral estoppel. Well, we decided that the state court had no jurisdiction because of the lack of, you know, a proper party or doing it just to aid the state in this case. So if we don't give preclusive effect to the state judgment, then I gather we, do you think we should certify or not to the states? Well, that's an option that's available to the court, of course. But I think more importantly, even if the state court's interpretation of state law were correct here, there is still no violation of federal law. And I'd really like to focus my remaining time on those questions unless there are other questions about the state law, about the state law issue specifically. So for, so setting aside whether the district court's interpretation of state law was correct, there still was no violation of federal law here. There was no violation of the fundamental unfairness doctrine in the due process clause because a mere violation of state law doesn't, isn't suddenly transformed. Plaintiffs claim dilution of their vote. Yeah, and let's move, I can move to that claim. So the other claim that the district court found satisfied was the equal protection claim. There was no equal protection violation here, Your Honor, for two reasons. First, their votes were not diluted because the decisive threshold in this particular situation of Amendment 1, where there were more votes on the amendment than cast for governor, was simply a majority, whether there was a majority of the total votes cast on the amendment, whether there were more yes votes than no votes. In that calculation, each vote is entitled to exactly the same weight, and there was simply no vote dilution. And I think this illustrates that what plaintiffs are really complaining about here is not that their votes were diluted in any absolute sense, but that because of the high voter turnout on Amendment 1, they lost the advantage that opponents of an amendment would otherwise have when the vote for governor creates a higher super majority threshold for passage. Equal treatment, of course, doesn't violate the equal protection clause. But even if there were some vote dilution here under the Supreme Court's decision in Gordon v. Lance and its progeny, it's clear that vote dilution that occurs in the context of a referendum election, which is distinct from representative elections, does not violate the equal protection clause unless it invidiously discriminates against an identifiable class. And that discrimination must be on the basis of some extraneous condition that is unrelated to how the voter voted in the election. Well, I mean, the plaintiffs are upset with the campaign of the, what, pro-life group that was saying, hey, if you vote for, you know, you don't vote for governor and you'll get double counted in favor of Amendment 1. Your Honor, they are upset about that. But there was a campaign that was undertaken by opponents of the amendment to encourage people to vote for governor. And that illustrates that to the extent there were strategic voting opportunities here, those opportunities were available to both sides. And there is also no support, no authority for the notion that simply by creating opportunities to vote strategically, that a state's election practice somehow violates the U.S. Constitution. There are, you know, as Plaintiffs' Amici I think readily acknowledge, all sorts of voting systems create opportunities for strategic voting. I think bullet voting being the most well-known example. I see that my time is up. You can finish your thought there. So bullet voting being the most well-known example of strategic voting. So there's no support for the notion that strategic voting is constitutionally problematic. And there's also no support for the notion that simply using the results of another election for the threshold is constitutionally problematic. So we think that Tennessee's approval and ratification requirement is materially indistinguishable from the requirements that have been upheld under Gordon v. Lance and their progeny. Thank you, Your Honors. Thank you. Mr. Harbison. Good morning, Your Honors. May it please the Court. I'm Bill Harbison of the Nashville Bar, and I'm here representing the plaintiffs' appellees in this lawsuit. The method, the so-called legislative method, that the Tennessee Constitution includes for amending the Constitution, as far as our research shows, is unique in the United States. We are not aware of another state constitution that requires an amendment process that somehow pegs one vote to a vote in another election. And however the Court reads the Tennessee constitutional provision at issue here, it does in some way tie the vote on an amendment to the vote in the governor's race. That fact is inescapable. We suggest to the Court that the plain language of the Tennessee Constitution means that the people who vote for governor are the people whose votes count in a vote for an amendment. And the State interprets it as... And the District Court found that plain and obvious, right? They did, yes, Your Honor. They did. He did, and he found that as a fact. The State's reading, I think their main defense here is that we've always done it this way. And the reality is, until this election, there had not been a campaign effort to strategically utilize Tennessee's method of counting to what I would call game the system. That is to say, to encourage voters to vote on an amendment but not vote in the governor's race so that they increase the number of votes to pass an amendment but decrease the threshold for the number of people who must participate. I don't understand why a reading of this portion of the Tennessee Constitution isn't just as likely that you simply add up all the votes that somebody voted for governor, it gives you a number, and you've got to get more than 50% of that as opposed to tying it to specific people who voted for governor. Well, Your Honor, we think the language of citizens of the State voting for governor means people voting for governor, not... They could have said the number of votes in the governor's race. Well, I understand your argument, but to say, as the District Court did, that that's plain and obvious does not seem to be very plain or obvious to me. I see. Well, we included our sentence diagram. I see that. Three-fourths of a page of sentence diagram. We went to our seventh-grade grammar. I would say clear. We went to our seventh-grade grammar for that, but... Like a spider web to me. Perhaps. Well, there's a lot of words. There's a lot of words in the Constitution. I hadn't seen a sentence diagram like this since the eighth grade. Well, I was putting it at seventh grade, but we understand, Your Honor, that... What can I say? We understand that there are two readings proffered here, and if the Court looks at the State's proposed reading, I think embedded in that are federal constitutional problems that don't get escaped. So let me explain what I mean by that. The State's method of counting enabled the campaign of which we speak, the campaign that the District Court found occurred, encouraging people to basically vote on the amendment and not vote in the governor's race. That's the first time that's ever happened. It's also the first time in the history of the State that more people voted on an amendment than voted in the governor's race. Was there anything that precluded your side from campaigning to vote in the governor's race? Well, no, Your Honor, but the reality is that for no voters, and this is the unequal or what the amicus brief calls asymmetrical opportunities that exist here and why there's vote dilution, is that no voters had no choice but to vote in the governor's race. Had they not voted in the governor's race, their votes essentially wouldn't have counted. They would not have... They wouldn't have counted for the ratification. For the ratification. They would clearly have counted for the approval. Well, right, Your Honor, but again, Tennessee's Constitution doesn't require a mere approval. In other words, our Constitution doesn't require a majority vote alone. What do you understand if there is any legislative history? What's the purpose of the dual requirement that there both be the ratification and the approval? We believe, I mean, the State has offered the, and I'm going to be paraphrasing, the State has offered the justification that it would be to make it more difficult to amend the Constitution and particularly to prevent interest groups from banding together and amending it too easily. And also so that the vote on an amendment occurs at a time when there is a significant election, namely the governor's race. That makes sense. So if that's so and you don't have any contrary theory, I gather. No. We think those are, as the district court found, those are laudable goals. Okay. But in point of fact... Those very same people voted for governor. Your Honor, they require it because if the State's reading is upheld, then we have a system where the rights of yes voters and the rights of no voters are not the same. Another way to put it is that the right to vote is burdened differently and strategic opportunities are distributed differently. Explain why under any argument from either side it's a burden. Why it's a burden, Your Honor? Yes. Generally speaking, the right to vote and a burden on the right to vote deals with the question of whether you can show up and cast your vote. We understand that. We're certainly not alleging that. You're now taking this question of burden, as we see in a number of the Supreme Court cases, and it seems to me you're pushing it to a place for which there is little or no authority. Well, Your Honor, we candidly admit that there is not another situation exactly like this one. Again, we couldn't find a case where the vote in one election is tied to the vote in another election. There are cases that deal with putting a burden of saying you must vote in a prior election in order to vote in a current election, and those have been found to be severe burdens. But here, somehow, and we suggest it's an obvious way, and under our reading, the burdens are the same on yes and no voters, and the benefits are the same on yes and no voters. You say that, but, I mean, as Judge McKeague pointed out, the campaign against the amendment could have been, hey, more people that better vote in the governor's race because that increases the threshold to. Well, they certainly could have done that, Your Honor, but, again, the way to think about that is that no voters really were compelled to vote in the governor's race in order for that element for the. Well, incentivized might be the better word. They weren't, quote, compelled in the sense someone's holding a gun to them. And a system that either incentivizes someone not to vote in one election or to vote in another election is suspect, we would suggest. Well, isn't that bullet voting? No, it's not the same as bullet voting, but the opportunities are the same for all voters. Here, the opportunities are not the same for all voters. The ability to basically change the denominator exists only for yes voters. It doesn't exist for no voters. No voters. Your underlying theory is that the ability to affect the denominator is a burden. Yes. And there's simply no case that says that, is there? Well, we don't have another case dealing with pegging one vote. So what's your most analogous case that says something affecting the denominator as opposed to being able to show up and vote and have your vote counted is a burden? Your Honor, just the fact that the votes, we would suggest, don't count the same, we would go back to Baker v. Carr and his progeny. The notion that all votes should be the same, that all votes should be of equal dignity for all purposes, the district court found as part of his findings of fact and conclusions. Well, Baker v. Carr is one person, one vote. Yes, but it's a principle that we would suggest says to the court, and of course the cases that say how precious the right to vote is, that those opportunities to vote, yes, they could show up at the poll. Don't forget, we're talking about a state election here. And when you apply Baker v. Carr to state elections, the Supreme Court has made it very clear you can have up to a 10% deviation, plus or minus. So it doesn't even really apply the way you're phrasing it in state elections to begin with. Well, Your Honor, again, we know that elections aren't perfect. But we also know that votes shouldn't be diluted. Reynolds v. Sims that came after Baker v. Carr tells us that. And we know that compelling people to vote is not an appropriate thing to do. How is your vote diluted if you have the opportunity to vote in the governor's race and whether you choose to or not ends up being apparently a strategical decision? Your Honor, everybody can come to the polls and vote, and that's what the state has emphasized, and that's true. But even under their formulation, which we say is incorrect, but even under their formulation, there's a voting threshold for a majority, and there's also some kind of participation threshold, that is to say the number of people voting in the governor's race. And even under their formulation, that second step is subject to manipulation. Did you have an equal opportunity to encourage people either to vote or not vote in the gubernatorial election, just like apparently was undertaken by the other side? I would suggest no, Your Honor. And explain why not. Because for the no votes to count for both purposes, that is to say for a majority and for whatever the governor's race pegging means, no voters had to vote in the governor's race. And the yes voters were able to lower that denominator. The no voters were not able to rebut that. There's no corresponding opportunity for no voters. That's simply the case. Again, our reading rests on the plain language and the narrow interpretation we would suggest of the Tennessee Constitution. This two-step process that the state advances, we suggest, is not in the language. Let's assume for a second that the state constitution does say what you contend that it says. From where do you then derive a due process violation? The argument is because the state didn't follow its own constitution, therefore there is a federal due process violation. And why is that? It's simply the fact that the state didn't follow the law. When the state acts and doesn't apply its own law in a fair and impartial way. So you're saying any time there's a state law violation, that's now been federalized by the federal due process clause? I don't know about every time, Your Honor, but when it's the right to vote, which is precious and fundamental, and when that right is burdened... Do we have a case that stands for that proposition? Well, again... If you don't follow... In fairness to you, let me just tell you, every election cycle we get more and more challenges to the alleged failure of somebody to follow state law. I understand. So every time those are made, that's a viable due process violation? I know that the court has adopted... I know the court decided a case last year where they applied, most recently, maybe there are more recent cases, the Anderson verdict framework of balancing. And so we understand that's what this court does. We are suggesting that when you do that balancing test, in this instance, you should find that the district court got it right here. You only get to Anderson verdict if there's a burden. Right. And we know we have to show that there's a burden, and we hope we've persuaded you that, in fact, this unequal opportunity... And we suggest that the campaign itself is evidence of a burden. This campaign was found as a fact by the district court. Wait a minute. So now you would go one step further, it seems to me, and say that because of what people say under their First Amendment rights as a part of a campaign, that then means that the way the state conducted the election and counted the ballots is a violation of due process? Well, the campaign was enabled by the state announcing ahead of time how it was going to count the ballots. So those are intertwined. This was the first such campaign of which we are aware in the history of our state. Are you alleging there was some sort of collusion there? No. We don't feel we... Pro-life people? No, Your Honor, we're not. And the district court found, to be fair, that the state actors here acted in good faith, and we're not alleging impropriety on that type of level, no. Why isn't that, you know, there's a problem with what they call compelled voting. Yes. What the district court has done with its injunction, it is a form of compelled voting in it based on whether you voted in the governor's race. That's tying one election contest to another. Yes, Your Honor, that's right. And, again, we think, we realize, and one of the reasons that we are here, is that Tennessee's unique provision about amendment of its Constitution in some way ties two elections together. That is problematic. We understand that. Because if we agree with the district court, say that its interpretation of the Tennessee Constitution is correct, that you have to have voted for governor in order for your vote to count on the amendment, then wouldn't we face the federal constitutional question of whether that's compelled voting as a due process violation? Your Honor, there is definitely tension here between following the state Constitution and violating the federal Constitution. And, to be fair, again, the compelled voting argument was first raised by the people who are the yes supporters. They are the ones who said, look, if you only count the votes that are in the governor's race, that's compelling people to vote in the governor's race. We would suggest that there's a compelled voting problem either way. And I know, Judge Gilman, you said earlier you're only incentivized. But it's more than incentivized if your vote doesn't count. How do you address the disenfranchisement that will occur as a result of the district court order here? Your Honor, you mean the disenfranchisement of the people who voted yes? The people that relied upon the state actors' interpretations of the Constitution, which seems to have been going on for a long time. So people show up and, for whatever reason, they don't vote for governor. Maybe it's because they wanted to change the denominator. Maybe they just didn't like any of the characters running for governor. I mean, it's a free country. So now, all of a sudden, their vote doesn't count on the amendment. I don't see how that could be possible. Well, we have to look at the question. So that really goes to the question of remedy. And we understand one thing to keep in mind here, we ask the court to keep in mind, is that the nature of this election is really far more significant than a race for an elected office. In a race for an elected office, there's going to be a new election two or four or six years later. In this kind of election, it's permanent. So when the court considers the equitable factors that apply when picking a remedy, the harm here, if the court agrees that this is a burden and it's a problem, then the remedy should take into account the permanence of this problem. Explain very briefly, if you would, because your red light is on, how the permanency of this amendment of the Constitution is even relevant to the disenfranchisement question. Are you simply saying, it's too bad if we disenfranchise tens of thousands of people because this is going to last a long time? Is that it? Well, it's partly it, John. I would suggest to the court that it's not really disenfranchisement if the election is a tainted and fundamentally unfair election, as the district court found. And a vote in an unfair election where there was a campaign that said, we know this sounds crazy, but vote for the amendment and don't vote for governor, it's the law. That's, in our view, a tainted election. And so the concern about disenfranchising, we think disenfranchisement is probably not the right word. There is a remedy later, which is to get it back on the ballot in some other way and count it in a fair way. But for the no voters here, there's really not a remedy, other than what the district court has done. We respectfully ask that the court affirm the district court decision. Thank you. Thank you. Ms. Campbell. Thank you, Your Honors. I'd like to begin where opposing counsel ended with the question of remedy. Opposing counsel acknowledged that the recount of the votes is really the only recourse, or voting in the election is the only recourse that's available to the district court. And those remedies are actually not proper because, as Your Honors have pointed out, they would create constitutional problems of their own. And I think those remedies also rest on plaintiff's interpretation of the legislative amendment clause. There is no basis for voiding the election if the vote count couldn't possibly have come out any differently. And the only way the vote could have been different is under plaintiff's interpretation of what the Tennessee Constitution requires. There's no allegation here that voters were intimidated, that votes were suppressed, that the ballot box was stuffed. There's no allegation that there was a taint in the improper sense in this election. So the votes that were tabulated on Amendment 1 are an accurate reflection of the will of Tennessee voters about what their fundamental law should be. Assuming that their construction of the Tennessee Constitution is correct, what is your position as to whether even then there is a due process violation? If their interpretation is correct, there's still no due process violation because a mere violation of state law doesn't rise to the level of fundamental unfairness. And I'd point your court to the Eleventh Circuit's decision in Roe v. Alabama and the First Circuit's decision in Griffin. In both of those cases, there were problems with absentee ballots being counted. And the state had counted those ballots consistently with its past election practice. The state court then said, no, actually you have to count them this way because this is what state law requires. And federal courts then held that the state court's order requiring them to recount them based on a new interpretation of state law was fundamentally unfair because it was prejudicial to voters and it interfered with their reliance interests. And that's the situation we have here. It doesn't matter whether it violated state law. Fundamental unfairness is about fairness to voters, whether voters were prejudiced. And here, voters went to the polls with the expectation that their votes would be counted. And so you can't, after the fact, change the rules of the game and disenfranchise voters. The remedy here that the district court ordered is the definition of fundamental unfairness. I don't know that this is relevant, but I am curious what Mr. Herbison is arguing, at least in part, is that the fundamental unfairness arises not from what the state did or didn't do, but the way in which one side of this dispute campaigned. Was there any effort made if the method of campaigning was somehow improper because the end result was violating somebody's fundamental rights to interfere with the campaign before the election? I don't think that the constitutionality of a provision of the state constitution can turn on what private parties do. I know you don't buy his fundamental premise. I get that. But assuming even that his fundamental premise is right, was there any effort to undo the state's interpretation or the method that the proponents were using to campaign prior to the election? Any effort by the state? Any election by the petitioners in this case, the appellants. Well, there were campaigns on both sides. Excuse me, you're the appellants. By the appellees. Any actions in the courts? I'm not sure I'm understanding your question. I'm sorry. He says that in part this due process violation for failure to follow state law is affected by virtue of the fact that the campaign was being run to say don't run, don't vote for governor and change the denominator. He says that resulted in the election being fundamentally unfair. So was there any effort taken by the appellees in this case to challenge the state's interpretation before the election and then publicize that or to try to stop what was being said, which he thinks violates his client's fundamental rights? Your Honor, there was no effort to challenge the state's interpretation, either through some administrative procedure or through a pre-election suit to seek a preliminary injunction. Those were things that were available to them. They did not do. And that's another reason why voiding the election would not be appropriate. There was a campaign from the other side. So it was a war of words. Vote for governor, don't vote for governor because it's going to have an impact on the amendment. Your Honor, it was democracy at work. It was both sides advocating their position and advocating the best way to vote to advance their position. Anything you have? All right. Thank you. Thank you, Your Honor. This is certainly an interesting case, and it will be submitted. And as I indicated, we're going to take